## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **LINDA B.,** | |
| **Plaintiff,** | **CIVIL ACTION NO.** <br> **1:20-CV-2820-JPB-CCB** |
| **v.** | |
| **COMMISSIONER, SOCIAL** <br> **SECURITY ADMINISTRATION,** | **FINAL REPORT AND** <br> **RECOMMENDATION ON AN** <br> **APPEAL FROM A SOCIAL** |
| **Defendant.** | **SECURITY DISABILITY ACTION** |

Plaintiff Linda B. brings this action under 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), who denied Plaintiff's claim for period of disability and disability insurance benefits (DIB). (Doc. 16-2 at 18–30).

Plaintiff filed applications for DIB and supplemental security income (SSI)[1] in October of 2017, alleging an onset date of disability of January 1, 2015. (Doc. 16-5 at 2–16). Plaintiff's DIB application was denied initially and on reconsideration. (Doc. 16-3 at 2–23). An Administrative Law Judge (ALJ) then heard the case and found that Plaintiff was not disabled from the alleged onset date, January 1, 2015,

---

[1] The Administrative Law Judge (ALJ) does not mention the SSI application in her decision, and Plaintiff does not take issue with that in her brief.

through the date of the decision. (Doc. 16-2 at 18–30). The Appeals Council of the Social Security Administration denied Plaintiff's request for review, making the ALJ's decision final. *Id.* at 7–12. Plaintiff filed this action on July 6, 2020. (Doc. 1).[2]

After the briefing in this matter was complete, Plaintiff filed a notice of supplemental authority. (Doc. 23). Defendant filed a response to the notice of supplemental authority, which the Clerk docketed as a motion for leave to file a supplemental response. (Doc. 25). To the extent that the Commissioner's response to Plaintiff's supplemental authority is construed as a motion for leave to file such a response, it is **GRANTED**.

The matter is now before the undersigned and is ripe for review under 42 U.S.C. § 405(g). For the reasons set forth below, based on the administrative record and the briefs of the parties, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

## I.   STANDARD FOR DETERMINING DISABILITY

An individual is "disabled" for purposes of disability benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[2] Plaintiff filed an application for leave to proceed *in forma pauperis* on July 6, 2020, (Doc. 1), which the Court granted on July 9, 2020, (Doc. 3).

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Any impairments must result from anatomical, psychological, or physiological abnormalities demonstrated by medically accepted clinical or laboratory diagnostic techniques, 42 U.S.C. § 423(d)(3), and those impairments must prevent the claimant from substantial gainful work, 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner must use a five-step sequential analysis:

(1)    Is the claimant currently working? If so, the claim is denied.

(2)    Is the claimed impairment severe; that is, does the impairment or combination of impairments significantly limit the individual's physical or mental ability to do basic work activities? If not, the claim is denied.

(3)    Does the impairment equal or exceed in severity certain impairments described in the impairment listings in the regulations? If so, the claimant is automatically entitled to disability benefits.

(4)    Does the claimant have sufficient residual functional capacity (RFC) to perform past work? If so, the claim is denied.

3

(5)    Considering the claimant's age, education, work experience, and RFC, can the claimant perform any other gainful and substantial work? If so, the claim is denied.

*See* 20 C.F.R. § 416.920. The "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant," although the burdens temporarily shift at step five of the sequential analysis. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (internal quotation marks omitted). Specifically, at step five, "the burden of going forward shifts to the SSA to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Id.* (internal quotation marks omitted). "If the SSA makes this showing, the burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the SSA." *Id.* (internal quotation marks and alteration omitted). If the claimant satisfies that burden by showing that he is unable to perform the work suggested by the Commissioner because of his impairment, the ALJ will find that the claimant is disabled and entitled to benefits. *Id.*

Here, the ALJ denied disability benefits at step five, finding that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with certain listed exceptions. (Doc. 16-2 at 24). On appeal, Plaintiff raises two issues:

4

(1) whether the ALJ erred by failing to include Plaintiff's non-exertional limitations in formulating the RFC, and (2) whether the ALJ erred by misstating the record in her decision about the vocational expert's testimony concerning Plaintiff's past relevant work. (Doc. 18 at 1, 12–23). The Court sets forth the facts and findings of the ALJ below, with particular emphasis on those most relevant to the specific issues that Plaintiff raises on appeal.

## II.   FACTS AND THE FINDINGS OF THE ALJ

The ALJ held a hearing at which Plaintiff testified. Plaintiff stated that, during the relevant period, she had difficulty concentrating and focusing about 45% of the time, along with pain and fatigue. (Doc. 16-2 at 44, 48). She testified that her hypothyroidism,[3] along with Multiple Sclerosis (MS), caused fatigue, which continued even after she had thyroid surgery. *Id.* at 45–47. She further testified that she had memory problems and that, after the relevant period, her physician, Dr. David Olson, M.D., attributed those memory problems to Plaintiff's MS. *Id.* at 47–48. Plaintiff also stated that she got an MRI for her back because she was in "excruciating pain . . . [and] could not function," and that the pain from her back

---

[3] The transcript indicates that Plaintiff said that she had "hypothyroidism." (Doc. 16-2 at 45). However, the transcript also indicates that at least part of Plaintiff's answer was inaudible. *Id.* The ALJ found that Plaintiff's "hyperparathyroidism" amounted to a non-severe impairment. (Doc. 16-2 at 23).

combined with her MS was a six or seven on a scale of one-to-ten, affecting her ability to focus and concentrate, to lift more than five pounds, and to stand or walk without needing to lay down. *Id.* at 50, 54–56.

The ALJ made the following findings of fact and conclusions of law:

(1) The claimant last met the insured status requirements of the Social Security Act on March 31, 2016.

(2) The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2015 through her date last insured of March 31, 2016 (20 CFR 404.1571 *et seq.*).

(3) Through the date last insured, the claimant had the following severe impairment[s]: Multiple Sclerosis; obesity and degenerative joint disease of the lumbar spine (20 CFR 404.1520(c)). . . .

(4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). . . .

(5) After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ropes, ladders or scaffolds; occasionally climb ramps/stairs, balance, stoop, crouch, crawl, and kneel and can have no more than occasional exposure to workplace hazards. . . .

(6) Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565). . . .

(7) The claimant was born on [date redacted] and was 51 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

(8) The claimant has at least a high school education and is able to

communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). . . .

(11) The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2015, the alleged onset date, through March 31, 2016, the date last insured (20 CFR 404.1520(g)).

(Doc. 16-2 at 23–29).

The ALJ noted the following regarding Plaintiff's medical history:

Progress notes dated February 23, 2016 from Diabetes and Endocrinology Associates indicate that the claimant presented with complaints of severe lethargy and myalgias. Overall, the physical exam was normal.

. . .

Treatment records from March 2016 indicate the claimant presented for a surgical evaluation of primary hyperparathyroidism. She complained of a lack of energy/fatigue and not feeling well, a lack of interest in her usual activities, concentration problems, bone pain, trouble sleeping, daytime tiredness, irritability, [and] worsening memory . . .

Progress notes from DeKalb Neurology Group dated May 16, 2016 indicate that the claimant wanted to proceed with having surgery on her thyroid and since her last visit, her general health had been good

. . . . The neurologic exam was normal and noted that there were no gross motor or sensory deficits. . . .

Treatment records not[e] that in May 2016 an MRI of the brain had been ordered due to the claimant's. . . head pain that was noted to have no hyperflexion, no loss of motor sensory, or visual functioning. The May 2016 MRI of the claimant's brain showed that the parenchyma of the brain was abnormal. There were vague marginal intensity punctate lesions in the internal capsules bilaterally suggestive of acute microvascular infarctions. Multiple small cerebral white matter lesions distributed in the hemispheres bilaterally suggestive of microvascular disease, but also very vague and low in signal intensity, not acute. There were also multiple medium-sized cerebral white matter lesions bilaterally more suggestive of multiple sclerosis or other white matter process rather than typical microvascular disease. A vertebral and carotid doppler ultrasound noted no hemodynamically significant stenosis. An MRI dated June 2016 of the claimant's lumbar spine showed that the claimant had moderate to advanced facet arthropathy throughout the lumbar spine with a small volume circumferential disc bulge at L4-L5. No significant canal or neural foraminal stenosis and no evidence of complication of the lumbar puncture.

*Id.* at 25–26 (internal record citations omitted).

The ALJ noted that, based on the MRI of Plaintiff's lumbar spine and her complaints of pain, Plaintiff had some limitations, and that

although the MRI was performed after the claimant's March 31, 2016 date of last insured, such degeneration does not happen overnight and it is reasonable to conclude that the claimant had such degeneration as of March 31, 2016.

*Id.* at 27. Dr. Olson prepared a report, which the ALJ summarized in these terms:

> In a September 2017 medical opinion, David Olson, M.D. opined that the claimant experiences pain in her legs and back. That on a pain scale of 1–10, the claimant's pain is 7 to 10 and that she has experienced such pain for five years. Dr. Olson opined that the claimant's pain would prevent her from concentrating and completing tasks in a timely manner. The record also noted that due to pain she would be "frequently" (34% to 66% of an 8-hour workday) "off task" (symptoms would likely be severe enough to interfere with attention and concentration needed to perform even simple work tasks).

*Id.* at 26 (internal record citation omitted).

However, the ALJ did not find Dr. Olson's medical opinion persuasive, as it was drafted more than a year after Plaintiff's date last insured, and because the statement in his opinion that Plaintiff had a pain level of seven-to-ten (on a scale of one-to-ten) for a period of five years was "not supported by the medical evidence record for the relevant period." *Id.* at 26–27. The ALJ noted that the medical evidence from the relevant period indicates that Plaintiff's exams "were almost entirely normal," and therefore does not support Dr. Olson's assessment of Plaintiff's pain level during the relevant period. *Id.* at 27. Further, the ALJ stated that

> [w]ith regard to claimant's allegations regarding her multiple sclerosis, and degenerative joint disease of the lumbar spine, as previously indicated, the record consistently notes that . . . during the relevant period, the claimant had almost entirely normal exams. The exams noted that she had no spinal tenderness, no gross motor or sensory deficits, and normal strength with regard to her upper and

lower bilateral extremities. She also was noted to have a normal gait and was able to stand without difficulty.

*Id.* at 27.

In considering the medical evidence and Plaintiff's testimony, the ALJ found that

> [T]he claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements considering the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . . *Id.* at 25.

> The claimant testified that during the relevant period, due to fatigue and back pain she lie down. The treatment records do note that the claimant complained of back pain and fatigue. However, the record does not contain medical signs and findings that indicate limitations to the extent alleged by the claimant. Additionally, there is no evidence from a treating or examining physician that establishes claimant has had a medically required need to lie down. Thus, the [ALJ] finds claimant's testimony regarding the need to lie down to be unsupported and not consistent with the evidence. *Id.* at 27–28.

Finally, the ALJ noted that Plaintiff suffers from obesity, which the ALJ considered in assessing Plaintiff's residual functional capacity. *Id.* at 28. The ALJ noted that "[b]ecause of obesity, an individual may have limitations in any of the exertional or non-exertional functions . . . [and] that 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'" *Id.* (internal record citation omitted).

10

At the hearing, the ALJ offered the following hypothetical to the vocational expert:

> If we assume an individual of the claimant's age, education, and work experience who is limited to light work as defined by the regulations, could not climb ropes, ladders, or scaffolds, could occasionally climb ramps and stairs, balance, stoop, crouch, crawl, and kneel all occasional. Could be limited finally to no more than occasional exposure to work place hazards.

*Id.* at 57. The vocational expert responded that Plaintiff could still do her past work, and provided other examples of work that Plaintiff could perform in the national economy. *Id.* at 57–58. The ALJ subsequently asked the vocational expert: "if [an] individual had difficulty maintaining concentration such that he or she would be off-task an average of 15 percent of the work day how would that affect the past work and other work?" *Id.* at 58. The vocational expert replied that such an individual "would not be able to sustain competitive employment." *Id.*

The ALJ determined that Plaintiff is capable of performing work that exists in significant numbers in the national economy and, as such, found that she was not disabled. *Id.* at 28–29.

III.   **SCOPE OF JUDICIAL REVIEW**

In reviewing the denial of Social Security disability benefits, this Court "must review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record." *Washington*, 906 F.3d at 1358 (internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal quotation marks omitted). Put differently, the Court "must decide whether on this record it would have been possible for a reasonable jury to reach the agency's conclusion." *Washington*, 906 F.3d at 1358 (internal quotation marks and alteration omitted). "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990) (internal quotation marks omitted).

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Rather, the Court may only "determine whether the Commissioner's decision is supported by substantial evidence and

based on proper legal standards." *Id.* (internal quotation marks omitted). Indeed, even if the evidence preponderates against the Commissioner's findings, this Court must affirm if the decision is supported by substantial evidence. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). The Commissioner's findings of fact, therefore, if supported by substantial evidence, "shall be conclusive." *Washington*, 906 F.3d at 1358 (quoting 42 U.S.C. § 405(g)). The Court reviews whether the Commissioner's decision was based on a proper view of the law, on the other hand, *de novo. See id.*; *Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1372 (N.D. Ga. 2006) (noting that "[t]here is no presumption that the legal standard applied by the Commissioner was valid, or that it was properly applied" and that "the application of a wrong legal standard is grounds for remand").

## IV.   DISCUSSION

As noted above, Plaintiff raises two issues on appeal: (1) whether the ALJ erred by failing to include Plaintiff's non-exertional limitations in formulating the RFC, and (2) whether the ALJ erred by misstating the record in her decision about

the vocational expert's testimony concerning Plaintiff's past relevant work. (Doc. 18 at 1, 12–23). The Court addresses each issue in turn.

## A. The ALJ's Consideration of Non-Exertional Limitations for the RFC

Plaintiff argues that the ALJ erred by failing to include in her RFC determination the non-exertional limitations that existed prior to Plaintiff's date last insured, stemming from Plaintiff's medically determinable impairments of MS and lumbar disc degeneration. (Doc. 18 at 13, 16–21). Plaintiff also asserts that the hypothetical to the vocational expert was in error, as it did not include Plaintiff's non-exertional limitations. *Id.* at 20. Defendant argues that the ALJ's RFC finding is supported by substantial evidence, that Plaintiff failed to show that she was more limited than the ALJ found her to be, (Doc. 20 at 8), and that "Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of her alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record," *id.* at 16–17. Defendant further asserts that the ALJ's RFC finding sufficiently accommodated any functional limitations arising from Plaintiff's lumbar disc degeneration and MS. *Id.* at 13. Lastly, Defendant argues

14

that the ALJ was not required to include limitations she found unsupported by the record in either the RFC or the vocational expert hypothetical. *Id.* at 18.

To establish a disability based on subjective testimony of pain and other symptoms, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). In applying this standard, if the "ALJ discredits subjective testimony, [s]he must articulate explicit and adequate reasons for doing so." *Id.* "[T]he ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (internal quotation marks omitted).

Here, Plaintiff testified as to certain symptoms she suffered during the relevant period, such as fatigue, difficulty concentrating and focusing, and lower back pain that affected her ability to stand, walk, and lift. (Doc. 16-2 at 25). After considering the evidence, the ALJ found

> that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and

15

> limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in [the ALJ's] decision.

*Id.* The Court finds that the medical evidence the ALJ cited adequately supports her decision to discredit, at least in part, Plaintiff's testimony.

The ALJ cites to occasions in December of 2015 and February of 2016 where Plaintiff's physical exams were "normal" or "unremarkable." *Id.* at 25. Additionally, the ALJ cites to treatment records from DeKalb Neurology from March of 2016 that indicate that Plaintiff's "physical exam was normal . . . that [she had] no spinal tenderness . . . no gross motor or sensory deficits were noted . . . and . . . [Plaintiff] had a normal gait, and was able to stand without difficulty." *Id.* at 26. Progress notes from May 16, 2016, from DeKalb Neurology Group show that Plaintiff's neurologic exam was normal, "that there were no gross motor or sensory deficits," that Plaintiff's "general health had been good," and that Plaintiff "had a normal gait and was able to stand without difficulty." *Id.* at 26. Further, the ALJ noted that "there is no evidence from a treating or examining physician that establishes claimant has had a medically required need to lie down," and that she therefore found Plaintiff's testimony regarding her need to lie down "unsupported and not consistent with the evidence." *Id.* at 28. This evidence provides substantial support for the ALJ's decision to at least partially discount Plaintiff's testimony as

16

it relates to her complaints of back pain, fatigue, and difficulty walking or standing.

To be sure, there are medical records that are more consistent with Plaintiff's complaints, and the ALJ considered that evidence as well. For example, the ALJ cited to progress notes from Diabetes and Endocrinology Associates from February 23, 2016, which "indicate that the claimant presented with complaints of severe lethargy and myalgias." *Id.* at 25. The ALJ cited to treatment records from March of 2016, which indicate that Plaintiff "presented for a surgical evaluation of primary hyperparathyroidism . . . [and] complained of a lack of energy/fatigue and not feeling well, a lack of interest in her usual activities, concentration problems, bone pain, trouble sleeping, daytime tiredness, irritability, worsening memory, heart palpitations or arrhythmias." *Id.* at 26. But the Court's job is not to reweigh the evidence, *Winschel*, 631 F.3d at 1178, and there is substantial evidence to support the ALJ's findings regarding Plaintiff's testimony about her back pain, fatigue, and need to lie down.

Plaintiff argues that the ALJ failed to include non-exertional limitations related to her difficulties concentrating and focusing. (Doc. 18 at 16). But Plaintiff's difficulties concentrating and being off-task are directly tied to her pain—she has trouble focusing and concentrating and is off-task *because of* her pain. And, as

17

noted above, there is substantial evidence to support the ALJ's decision to at least partially discount Plaintiff's testimony about her pain. Plaintiff makes much of the fact that she was diagnosed with MS, but the diagnosis itself is not the determining factor—the question is whether Plaintiff has functional limitations arising from that condition. *See, e.g.*, *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (noting that "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work" (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986))). Here the evidence Plaintiff puts forth in support of those functional limitations is her own testimony, and as noted above there is substantial medical evidence supporting the ALJ's decision to discount that testimony.

Plaintiff argues that, "[a]t the minimum, Dr. Ols[o]n's opinion shows that [Plaintiff] had a non-exertional impairment due to an inability to focus and concentrate" and that "[t]his treating source opinion is such that the ALJ should have included limitations in focusing and concentrating in the RFC determination." (Doc. 21 at 7). The ALJ found the medical opinion from Dr. Olson unpersuasive because it was drafted over a year after the date Plaintiff was last

18

insured and because it was inconsistent with the medical evidence noted above. (Doc. 16-2 at 27).[4]

The Eleventh Circuit has held that "a treating physician's opinion is still entitled to significant weight notwithstanding that he did not treat the claimant until after the relevant determination date." *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (superseded on other grounds). However, such opinions are only entitled to deference if corroborated by medical evidence contemporaneous with the relevant disability period. *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011). Here, Dr. Olson's opinion about the extent to which Plaintiff would be off task and would have trouble concentrating is entirely tied to her pain. (Doc. 16-7 at 504). He checked a box "yes" in response to the question, "Does pain prevent the patient from concentrating and completing tasks in a timely manner?" *Id.* And in response to the question, "Due to pain how much is your patient likely to be 'off task'?" he checked the box for "frequently." *Id.* The ALJ found that Dr. Olson's opinion was not persuasive because the medical records for the time in

---

[4] Plaintiff cites to *Gaskin v. Comm'r of Soc. Sec.*, 533 F. App'x 929 (11th Cir. 2013). (Doc. 18 at 19). In *Gaskin*, the case was remanded to the ALJ because the ALJ failed to address a particular doctor's assessment that the plaintiff's pain would interfere with his attention and concentration. 533 F. App'x at 931. Here, as noted above, the ALJ did address Dr. Olson's opinion.

question were inconsistent with pain to the degree that he suggested. (Doc. 16-2 at 27). As noted above, there is substantial evidence to support the ALJ's conclusion—the medical records for the time in question consistently revealed normal physical and neurological exams. Simply put, and going back to the pain standard, there is objective medical evidence inconsistent with the level of pain about which Plaintiff testified, and the ALJ's decision to discount that testimony and Dr. Olson's opinion is therefore supported by substantial evidence.[5]

In Plaintiff's reply brief, she argues that "anytime" someone has "MS and has lesions on the brain, it can be reasonably expected to cause non-exertional limitations." (Doc. 21 at 5). Plaintiff offers no citation to caselaw or the record to support this statement. All told, the ALJ's decision to discount Plaintiff's testimony

---

[5] The parties filed supplemental authority regarding the ALJ's treatment of Dr. Olson's opinion. (Docs. 23, 24, 25). Plaintiff does not raise as an issue in her opening brief that the ALJ erred in the particular weight that she assigned to Dr. Olson's opinion. (Doc. 18 at 1). As such, the arguments in the supplemental briefs about footnote 4 in the Eleventh Circuit's opinion in *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021), are not directly before the Court. Specifically, Plaintiff does not raise as an issue in her opening brief whether the ALJ complied with 20 C.F.R. § 404.1520c in her consideration of Dr. Olson's opinion, and that issue is therefore not before the Court. To the extent that Dr. Olson's opinion is relevant to the ALJ's consideration of Plaintiff's testimony, the Court has addressed that issue above.

about her pain and limitations finds support in the medical records, and the decision is therefore supported by substantial evidence.

### B. The ALJ's Misstatement of the Record

In the ALJ's opinion, she stated that the vocational expert testified at the hearing that Plaintiff would not be able to perform her past relevant work, based on the hypothetical provided by the ALJ. (Doc. 16-2 at 28). However, the hearing testimony makes clear that the vocational expert stated that Plaintiff's past work *would* still be available to her based on the hypothetical. *Id.* at 57. Plaintiff notes this error as one that should be corrected on remand, asserting that it is unclear whether the ALJ found that Plaintiff could not do her past relevant work *despite* the vocational expert testimony, or whether the ALJ intended to adopt the vocational expert's opinion but simply misstated the record. (Doc. 18 at 22). Defendant argues that "any error in the ALJ's step four finding was harmless to Plaintiff, as it shifted the burden to the Commissioner to identify other work Plaintiff could perform." (Doc. 20 at 20–21). Defendant then asserts that substantial evidence supports the ALJ's step-five finding that Plaintiff could perform other work available in significant numbers in the national economy, and therefore the ALJ's findings should be affirmed. *Id.* at 21–23.

"Where an ALJ makes a factual error, the error will be considered harmless if it is clear that the error did not affect the ALJ's ultimate determination." *Kemp v. Astrue*, 308 F. App'x 423, 425 (11th Cir. 2009). Here, the ALJ made her RFC determination independent of the vocational expert's step-four testimony that Plaintiff could perform her past relevant work, and the vocational expert's testimony would not have changed that RFC determination. Nor was the vocational expert's step-five testimony regarding jobs that exist in significant numbers in the national economy that Plaintiff could perform influenced by the expert's opinion as to Plaintiff's past relevant work. And the ALJ's ultimate disability determination arose from the vocational expert's step-five testimony. (Doc. 16-2 at 29). Therefore, any error was harmless. Indeed, by misstating the vocational expert's testimony, all the ALJ did was extend the analysis one step further than it had to go. Had the ALJ accurately noted the vocational expert's testimony that Plaintiff could perform her past work, the analysis could have ended then, at step four, with a finding that Plaintiff was not disabled. Instead, the ALJ went one step further and found Plaintiff not disabled at step five. Any error was altogether harmless.

22

## V.    CONCLUSION

For the reasons set forth above, Defendant's motion for leave to file a supplemental response, (Doc. 24), is **GRANTED** and the undersigned **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**.

This is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned, and the Clerk is therefore **DIRECTED** to terminate the reference of this case.

**IT IS SO RECOMMENDED** this 31st day of January, 2022.

_____
CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE

23